UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENESIS CAPITAL, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>THE LAURAVIN LUXURY<br>APARTMENTS HOMES, LLC,<br><br>    Defendant. | Civil Action No. 23-795 (JEB) |

MEMORANDUM OPINION

Last year, Plaintiff Genesis Capital, LLC provided Defendant Lauravin Luxury Apartments Homes, LLC an approximately $3 million mortgage on a multi-unit residential building. Lauravin is now in default for failing to make the requisite monthly payments and, according to Genesis, not properly maintaining the property. Plaintiff accordingly filed a two-count Complaint seeking appointment of a receiver for that property and an injunction in service of the appointment. In conjunction with the Complaint, it filed a separate Motion seeking that same relief. This Court denied the Motion last month because of defects with the underlying Complaint. Genesis has now filed an Amended Complaint, which cures the deficiencies that prompted the initial denial. It followed that pleading with a renewed Motion for Appointment of a Receiver, which the Court will now grant.

**I.    Background**

    A.  Factual Background

On April 13, 2022, Lauravin executed a Promissory Note documenting a $3,075,000 loan it received from Genesis. See ECF No. 13 (Am. Compl.), ¶ 9; No. 1-1 (Promissory Note). The

1

loan is secured in part by Lauravin's property at 1701 E St., NE, which is a six-unit apartment building.  See Am. Compl., ¶¶ 7, 11.  As relevant here, one of the mortgage documents contains a provision addressing receiverships.  It provides:

> At any time after the occurrence of an Event of Default, . . . Beneficiary and Trustee and each of them shall have each and all of the following rights and remedies: . . . (d) Appointment of Receiver. To apply to any court having jurisdiction to appoint a receiver or receivers for the Property, as a matter of right and without notice to Borrower or anyone claiming under Borrower, and without regard to the then value of the Property or the adequacy of any security for the obligations secured hereby, Borrower hereby irrevocably consents to such appointment and waives notice of any application therefor.

ECF No. 1-3 (Deed of Trust), § 6.16.1(d).

According to Plaintiff, Lauravin is currently in default under the terms of the loan for three reasons.  First, it never made the requisite principal and interest payments for the months of January through April 2023.  See Am. Compl., ¶ 14; ECF No. 1-6 (Demand for Payment) at 2.  Second, and relatedly, Defendant failed to pay the loan in full after Genesis accelerated the maturity date to May 1, 2023, after payments were not made.  See Am. Compl., ¶¶ 14, 17–18.  As of May 15, 2023, Lauravin owed Genesis roughly $3.4 million.  Id., ¶ 20.  Third and finally, Defendant violated the loan agreement via "its failure to maintain and preserve the Property." Id., ¶ 15.  As evidence of that failure, Plaintiff points to a pending housing-code complaint filed by a tenant of the property in the Superior Court of the District of Columbia.  Id.  That complaint alleges, among other things, that her unit is afflicted by plumbing leaks, cracks in the walls and ceilings, mold, rodents, and broken doors.  See ECF No. 1-4 (Housing Code Compl.) at 4.  The matter is currently pending in the Superior Court.  See Am. Compl., ¶ 15.

B.  Procedural Background

Plaintiff initiated this suit by filing a two-count Complaint on March 24.  Count I was labeled "Contractual and Statutory Right to Receivership."  ECF No. 1 (Compl.), ¶¶ 20–30.  More specifically, it asked this Court to appoint a receiver "to operate, manage, safeguard and, if necessary and appropriate (and with Lender's and the Court's prior written approval), market and sell the Property."  Id., ¶¶ 23, 27.  Count II sought a preliminary and permanent injunction in service of that appointment.  Id., ¶¶ 31–35.  On the same day it filed the Complaint, Plaintiff also filed a Motion for Appointment of Receiver and Preliminary Injunction.  See ECF No. 3 (First Mot.).

This Court denied that Motion.  Genesis Capital, LLC v. Lauravin Luxury Apartments Homes, LLC, No. 23-795, 2023 WL 3452305, at *1 (D.D.C. May 15, 2023).  As for the preliminary injunction, it found that Genesis could not show it was "likely to succeed on the merits of this case" (a prerequisite for entering a preliminary injunction) "for a very elementary reason: the Complaint contains no cause of action on which Genesis could succeed."  Id. at *2 (emphasis omitted).  Instead, the Complaint amounted to two prayers for relief.  Id. at *3.  The Court denied the Motion for Appointment of a Receiver, too, on the ground that courts "should not appoint a receiver where the appointment is not a remedy auxiliary to some primary relief which is sought . . . ."  Id. (quoting Kelleam v. Maryland Cas. Co. of Baltimore, 312 U.S. 377, 381 (1941)).

Acting quickly to rectify its shortcomings, Plaintiff filed a two-count Amended Complaint that cured both of those issues through the addition of an independent cause of action — a breach-of-contract claim in Count I — seeking relief in the form of a judgment for the debt plus accrued interest and fees.  Specifically, Genesis alleges that Defendant is "in breach of its

3

. . . obligations under the Loan Documents as a consequence of, among other things, its failure to pay the Term Loan in full on the Maturity Date." Am. Compl., ¶ 25; id., ¶¶ 23–31. Count II asserts a "contractual and statutory right to receivership with a preliminary and permanent injunction," which the Court treats as a prayer for relief. Id. at 7. Genesis requests that this Court appoint Mark G. Anderson Consultants, Inc. (MGAC) as receiver for the property with all appurtenant powers. Id., ¶ 39. A week later, Genesis filed a Renewed Motion for Appointment of Receiver. See ECF No. 14 (Mot.). At a hearing on this Motion, the Court ordered the parties to confer regarding the powers and authorities of the receiver, and they have now submitted a document setting those forth. See ECF No. 20 (Proposed Order).

## II.     Legal Standard

A receivership is an extraordinary equitable remedy that "should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid." Gordon v. Washington, 295 U.S. 30, 39 (1935). Appointment of a receiver "is not a matter of positive right but rather lies in the discretion of the court." Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.). In determining whether a receivership is appropriate, federal courts typically consider the following factors:

> i) inadequacy of the security to satisfy the debt;
> ii) financial position of the debtor;
> iii) fraudulent conduct on defendant's part;
> iv) inadequacy of legal remedies;
> v) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;
> vi) probability that harm to moving party by denial of appointment would outweigh injury to parties opposing appointment;
> vii) probability of moving party's success in the action and the possibility of irreparable injury to its interest in the property; and
> viii) whether moving party's interests sought to be protected will in fact be well-served by receivership.

Brill & Harrington Invs. v. Vernon Sav. & Loan Ass'n, 787 F. Supp. 250, 253–54 (D.D.C. 1992).

**III.    Analysis**

In considering the propriety of a receivership in this case, the Court begins with a threshold question: what effect should Defendant's contractual consent to the appointment of a receiver have on the equitable analysis?  See supra (quoting Deed of Trust, § 6.16.1(d)).  Courts are split on the issue.  U.S. Bank, Nat. Ass'n v. CB Settle Inn Ltd. P'ship, 827 F. Supp. 2d 993, 997 (S.D. Iowa 2011).  Some treat advance consent as dispositive and will appoint a receiver without considering the aforementioned equitable factors.  See, e.g., Britton v. Green, 325 F.2d 377, 382 (10th Cir. 1963).  Others have concluded that where the parties previously consented to an appointment, the burden shifts from the movant to the opponent to show that a receiver should not be appointed.  See, e.g., D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc., 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008).  And still others weigh prior consent as a factor that strongly supports appointing a receiver but that does not dispose of the need to evaluate the equitable factors.  See, e.g., Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC, No. 20-5309, 2020 WL 5802365, at *2 (S.D.N.Y. Sept. 28, 2020).

Fortunately, this Court need not take on the task of deciding which road to take in this case, as the parties are in agreement: Plaintiff asks this Court to adopt the most conservative approach — that is, the third — and Defendant makes no objection to that request.  See Mot. at 10; ECF No. 16 (Opp.) (making no mention of consent provision); see also ECF No. 19 (June 23, 2023 Hearing Tr.) at 5.  This Court will thus begin by placing a heavy thumb on the scale in favor of appointing a receiver.  Having done that, it may proceed to weighing the various equitable factors just set out.

5

The first two factors — inadequacy of the security to satisfy the debt and the debtor's financial position — weigh in favor of a receivership. Plaintiff has shown that there are questions about the value of the property relative to the debt it carries. All signs suggest, moreover, that Lauravin's financial condition is suspect. See Hearing Tr. at 8–10. It has not made any payments on its outstanding debt in months, nor has it suggested it will do so in the near future. Defendant, who is in the best position to assuage concerns raised under factors one and two, did nothing to quell Plaintiff's unease, either in its briefs or in the Court's hearing on this Motion.

The third factor — fraudulent conduct by the borrower — points in Defendant's favor, as Plaintiff does not allege any such conduct on Lauravin's part. Id. at 11. Factor four — inadequacy of legal remedies — is essentially a wash. As the parties agreed during the hearing on this Motion, Plaintiff is not entirely without recourse. At this juncture, it has available to it the legal remedy of foreclosure. Id. (Pl. Counsel: "[O]ne of my client's remedies is to foreclose on its deed of trust and to compel an auction of his property."). That would suggest that the fourth factor militates in Defendant's favor. On the other side of the balance, though, is Plaintiff's legitimate concern that absent a receiver, it will be substantially disadvantaged in the event it chooses to foreclose on the property. Because Genesis currently lacks control of and important information about the property, it cannot adequately prepare the property for a successful foreclosure sale. Id. (Pl. Counsel: "My client hasn't had and doesn't currently have any real-time information as to who's paying rent, . . . what the expenses of the property are. It can't get control of the property directly to determine that before a foreclosure without a receiver in place . . . ."). The fourth factor is thus in equipoise.

The fifth factor — imminent danger of harm to the property — favors Lauravin. Plaintiff maintains that there is an "imminent risk that the Property will be damaged or diminished in value if a receiver is not appointed." Mot. at 10. As evidence of that position, it points only to a single pending housing-code complaint from one tenant in the building. Id. While the complaint certainly suggests that there are problems with that tenant's unit, those issues — plumbing leaks, cracks in the walls, peeling paint, rodents — do not amount to the sort of damage that courts have relied on in finding for the movant under factor five. See, e.g., Miss Jones LLC v. Stiles, No. 17-1450, 2019 WL 3034906, at *4 (S.D.N.Y. July 10, 2019) (finding factor (v) supported receivership when leaks in individual unit and from roof were so severe that they "could jeopardize the structural integrity of the house"). Perhaps more importantly, Defendant assures the Court that a substantial amount of repair work has already been done to respond to the tenant's complaints. See Opp., ¶ 4. The remainder of the work, which apparently involves the services of an exterminator, is soon to be completed, too. See Hearing Tr. at 13 (Def. Counsel: "[T]his has been a fairly low-maintenance building except for this one tenant and this one problem, and we have resolved all those questions except for one, which just requires her to bring an exterminator in again . . . ."). The Court thus agrees with Defendant that there is no imminent danger of the property being damaged under current management and in the absence of a receivership.

The next factor, the "probability that harm to [the] moving party by denial of appointment would outweigh injury to parties opposing appointment," Brill & Harrington, 787 F. Supp. at 253, is neutral. Denying appointment of a receiver would almost certainly harm Plaintiff for the reasons discussed under factor four: without control of the property, Genesis will be substantially disadvantaged if it exercises the legal remedy of foreclosure. Granting the

appointment, however, would harm Defendant.  Lauravin would lose control of the property, thus making it harder for it to refinance the mortgage.  See Hearing Tr. at 5 (Def. Counsel: "My client is disadvantaged.  It's harder for him to get a refi with a receivership in place.").  Defendant also insists that the receiver's fees are unreasonably expensive in comparison to the costs of the current property manager.  Id. at 13 (Def. Counsel: "[T]his proposed receiver gets 10 percent of [fees paid to] any contractors, which mine does not.  So they get not only fees, they get fees on fees.").  Both sides thus have legitimate concerns that this Court must consider under factor six.

Factor seven is a different story.  The first part of this factor — the probability of the moving party's success in the action — clearly militates in favor of a receivership.  Defendant does not contest that it has defaulted on the loan, nor does it dispute that it has failed to make payments despite the loan having matured in full.  Id. at 3.  Plaintiff's probability of success in the underlying action, which alleges breach of the loan terms, is thus extremely high.  The second portion of the seventh factor requires the Court to consider the possibility of irreparable injury to the movant's interest in the property.  For the same reasons that the "imminent danger" factor points in Defendant's favor, the Court is doubtful that maintaining current management will lead to "irreparable injury" to Genesis's interest in the property.  Because Plaintiff's possibility of success on the merits is so high, however, the Court concludes that factor seven still points in favor of a receiver.

Finally, the eighth factor — whether the movant's interests will be protected by a receivership — plainly goes in that direction, too.  As this Court has now repeated several times, a receivership will permit Genesis to exercise control over the property and, in so doing, prepare

it for a foreclosure sale.  Plaintiff's interests will thus be well served by the requested appointment.

In sum, the equitable factors collectively tip slightly in Plaintiff's favor, though they are by no means a slam dunk.  Ordinarily, that might not be enough to justify the extraordinary remedy of a receivership.  This is not an ordinary case, however, because the equitable analysis was not conducted on a balanced set of scales.  Rather, this Court began with a presumption in favor of appointing a receiver in light of the parties' advance contractual agreement to a receivership.  With such a thumb placed firmly on the receivership side of the scale, and given that the equitable factors slightly favor such an appointment, this Court concludes that a receivership is justified here.

### IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiff's Motion for Appointment of Receiver.  A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 3, 2023